EMMA B. BRITTON, Appellant, *against* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent.

(Decided June 25th, 1883.)

In an action brought by a widow against a life insurance company, the complaint alleged that plaintiff's deceased husband had, before his marriage with her, obtained from defendant a policy of insurance upon his life, and that, after the marriage, he assigned the policy to her; that subsequently he and defendant, conspiring to cheat and defraud her of the benefit of the policy, allowed it to lapse and permitted the premium day to pass without the payment of the premium, for the purpose and with the intent to cancel the policy and to issue another to the husband for his own use and benefit; that the premium was not paid on the day when it was payable, and the policy was surrendered by him to defendant and was cancelled, but afterwards the premium was paid by him and defendant issued to him a new policy not payable to nor for the use or benefit of plaintiff. It did not appear from the complaint that the surrender and cancelling of the former policy was on or before the day upon which the premium on it was payable. *Held,* that no cause of action was disclosed, either upon the original policy or upon the ground that the new policy was a substitute for such original policy and as such belonged to plaintiff; and the complaint was properly dismissed.

APPEAL from a judgment of this court entered upon a dismissal of a complaint, and from the order dismissing the complaint.

The facts are stated in the opinion.

*W. I. Butler,* for appellant.

*Robert Sewell,* for respondent.

CHARLES P. DALY, Chief Justice.—It appeared by the complaint that S. W. Britton, before his marriage with the plaintiff, had obtained a policy upon his life from the defendants; and that after his marriage he assigned the policy to her. It is not therefore strictly what is known as a married woman's policy, under the enabling acts of May 28th, 1840, April 18th, 1866, and April 18th, 1870. To a certain

extent, however, it accomplished the same purpose, as it secured to her, upon her husband's death, the sum insured, upon the payment of the annual premiums; the obligation to pay which was thereafter upon her, as the assignee, if she wished to keep the policy alive.

It is averred that Britton was married to the plaintiff on the 18th day of July, 1867, and that prior to the 30th of April, which was the day when the next annual premium was payable, he assigned the policy to his wife, the plaintiff, and before that day that she deposited the written assignment with the defendants; and it further appears that when this annual premium became due, on the 30th of April, 1869, it was not paid, either by him or by her. It is averred that he and the defendants conspired to cheat and defraud the plaintiff of the benefit of the policy, but how or in what way does not appear, except by the statement that they allowed the policy to lapse, by permitting the premium day to pass by without the payment of the premium, for the purpose and with the intent to cancel that policy, and to issue another to Britton, for his own use and benefit; which is a strange averment of a conspiracy to cheat and defraud her of the policy, the obligation being upon her, as the assignee, to pay the annual premiums, and not upon them.

It is further averred that the policy was surrendered by Britton to the defendants and canceled; but when is not stated—a very material omission; for, as the annual premium which was payable on the 30th of April, 1869, had not been paid, there could be no surrender or canceling of the policy after that day, as the contract was then at an end, unless the defendants should, by accepting the premium, thereafter waive that condition and continue the policy.

The averment is in these words, "The said annual payment, due April 30th, 1869, was not paid that day, and the said policy was surrendered by said Britton to said defendant and was canceled; and thereafter, and on May 4th, 1869, in pursuance of the said intent to cheat and defraud

said plaintiff, the annual premium was paid to said Britton and said defendant issued to said Britton a new policy, which was not payable to nor for the use or benefit of said plaintiff, but was payable for the use and benefit of said Britton and to his legal representatives or assigns."

This does not amount to an averment—which would have been a material one—of the surrender and extinguishment of a policy which was in force; but, if it means anything, it is an averment of an act between the day when the policy lapsed, by the non-payment of the premium, and the 4th of May following, when the new policy was issued to Britton, and, as averred, the annual premium was paid by him.

It is further averred that no formal application for the new policy or a new risk was made in the usual manner; that no further or other medical examination of Britton was had ; that the number of the new policy was the same as that of the old one ; that it referred to and was based upon the previous application ; that the age of Britton was stated in it as in the old policy, thus: "Age in 1866, 62 years;" that the premium was not the one applicable to his age then of 65 years, but it was the same premium for the same amount, and, as an annual premium, was not payable on the 4th of May thereafter, but on the 30th of April, as in the old policy.

The complaint does not give the date of the assignment or fix it any further than that it was some time within the eighteen months that elapsed between the marriage in July, 1867, and the day when the policy lapsed, April 30th, 1869, or state who paid the preceding annual premium. The new policy was kept in full force by Britton, by the payment of the annual premiums, for several years, and on the 24th of January, 1874, the defendants took from him a surrender of it, paying him on the canceling of it $1,015.31. Britton died on the 12th of August, 1880.

The ground taken by the plaintiff is that the facts averred showed that the new policy was substituted for the former one, and, although taken in the name of her husband, belonged to her, upon the authority of *Barry* v. *Brune* (71 N.

Y. 261). That case, however, is distinguishable from the present one in several material particulars. The policies there were married women's policies, under the enabling statutes, an assignment of which to a creditor of the husband was obtained from the wife by duress, coercion and undue influence on the part of the husband; and the court held that under those circumstances they would assume that she had a right to expect that one of them, the husband or the assignee, would keep the policy in life by payment of the premiums; and that they owed her the duty to apprise her as to what had been done in respect to the policies, so that she could pay the premiums in case they were unwilling to do so.

But no such obligation or analogous duty was imposed upon the husband here. He had assigned his policy to his wife, but that did not obligate him to keep it alive thereafter by the payment of the annual premium; and if she failed to continue the policy, by paying the annual premium, it was simply her loss, whether it arose from her neglect or her inability.

There was in *Barry* v. *Brune*, the fact of the assignment by a married woman of her policy, whilst it was in full force and effect, which assignment was void upon two grounds—first, that it was obtained from her by coercion and duress, and second, that it was a policy that, under the statute, could not be assigned; and, as by means of that invalid instrument, the assignee got possession of the wife's policy, and was thereby enabled to surrender it to the insurers, and to take from them in place of it a policy to himself, the new policy was held to be necessarily a substitute for the old one—the assignee never having acquired any legal or equitable title to the old policy, the title to it still remaining in the wife, and the new policy given upon the surrender of the old one therefore necessarily belonging to her. The judge who delivered the opinion of the court put the decision as to the substitution upon this express ground, in these words: "Thus Brune, (the assignee) by means of the possession of the old policies, which belonged

to the plaintiff, and by using and surrendering them, obtained the new policies. The real substance of the transaction was a substitution of the new policies for the old for the purpose (on the part of the assignee) of getting the security which the old did not give him."

But this is a very different case. Here there was no surrender and extinguishment of a policy that was in full force and effect, there being nothing in the complaint to show that the surrender there referred to was made either on or before the 30th of April, 1869. To again quote the averment, it is that " the said annual premium, due April 30th, 1869, was not paid that day, and the said policy was surrendered by said Britton to said defendant and was canceled," which could not have been before the following day, May 1st, as the previously recited event, the non-payment of the annual premium, had not elapsed until the day for its payment, the 30th of April, had expired; and on the following day there was nothing to surrender or extinguish, the contract being then at an end, and the defendants released from all further liability under it.

If it had appeared by the complaint that the husband, after the assignment, had prevented the wife from paying the annual premium of the 30th of April, 1869, either by holding out the assurance to her that he would pay it himself, or had by any other act or contrivance prevented her or anyone on her behalf from doing so, there might be some ground for bringing the case, in part, within the decision in *Barry* v. *Brune.* But there is nothing in this case but the fact that the policy was assigned to the plaintiff, and that it lapsed by the failure to pay the premium, according to the condition, on the 30th of April, 1869.

It might naturally be supposed that a husband, upon assigning his policy to his wife, would not allow it to lapse by the non-payment of the annual premium, and, in a few days thereafter, take out another policy upon his life for his own, and not for his wife's benefit. For all, however, that we know, he may in this case have had satisfactory reasons for doing so; but, whether he had or not, we

cannot hold, as matter of law, that after he had assigned his policy to her he was under any legal or equitable obligation to pay the annual premium thereafter to keep it alive. He did not do so, nor did she, and the policy having thus come to an end, there was nothing legally to prevent him from taking out a new policy for his own benefit, for the same amount and upon the same terms and conditions as the former one, if the defendants saw fit to give it to him.

The complaint avers that on the 4th of May, 1869, " the said annual premium " (that is, the premium payable on the 30th of April preceding) " was paid to said Britton " (the word " to " being evidently a misprint for " by "), and that the defendant issued to Britton a new policy " which was not payable to nor for the use nor benefit of said plaintiff, but was payable for the use and benefit of said Britton and to his legal representatives or assigns."

This averment that the premium paid on the 4th May was a payment of the premium due on the lapsed policy, was evidently made with the purpose of assuming that the receipt and acceptance of it by the defendant, as it was of the same amount as the annual premium in the former policy, was a waiver of the condition in that policy and released the forfeiture, making the new policy a continuance of the original insurance, under the familiar rule, that by receiving the premium after maturity the insurer waives the condition, and the policy continues in force until the next annual premium is payable.

But it cannot be assumed that the sum paid on the 4th of May was a payment on the lapsed policy and accepted as such by the defendant. As I have already said, there was no obligation upon Britton to pay the premium which remained unpaid on the 30th of April, 1869; and there is nothing in the averments to show that he intended by this payment to do so, or that such was its effect. On the contrary, the premium under the new policy was payable in advance, upon the taking of the risk, as is usual in contracts of this nature, unless waived or otherwise provided for; and that he meant to and did pay it as the premium payable

upon a new policy to himself, is shown by the fact that he took that policy, not for the benefit of his wife, but had it made payable upon his death to his legal representatives. For nearly four years he paid the annual premiums upon it, and then surrendered it to the defendants, and, as respects them, terminated the risk and had the policy canceled, upon their paying him, in consideration of the premiums received, $1,005.31, which was less than the premiums he had paid under his new policy.

This being the state of facts, I wholly fail to see upon what ground the defendants can be adjudged to pay to the plaintiff, upon Britton's death, the full amount of the policy thus surrendered to them and canceled, or where there was any fraud upon the plaintiff.

The cases relied upon by the plaintiff are all cases where the policy was upon the husband's life for the benefit of the wife and payable to her or, under the enabling statutes, in the event of her death pending the contract, to her children, as in *Wilson* v. *Lawrence* (8 Hun 593; 13 Hun 238); *Barry* v. *Equitable Life Ins. Co.* (59 N. Y. 587); *Eadie* v. *Slimmon* (26 N. Y. 9); and where the substituted policy was enforced for the benefit of the wife, they were cases, as in *Chapin* v. *Fellowes* (36 Conn. 132); and *Barry* v. *Brune* (*supra*), where the original policy was in force, and was surrendered up and canceled upon the issuing of the new policy; and not cases like this, where the policy had run out, and the contract was at an end by the failure of the assignee to keep it alive.

I think, therefore, that the judge at the trial was right in dismissing the complaint, as disclosing no cause of action, and that the judgment should be affirmed.

VAN HOESEN, J., concurred.

Judgment affirmed, with costs.